IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, Plaintiff, | § § § § § | |
| v. | § | EP-08-CV-118-PRM |
| BORDER STATES TRAFFIC SUPPLY, INC., et al., Defendants. | § § § § § | |

## ORDER GRANTING DANIEL CORDOVA AND JACOB CORDOVA'S OPPOSED MOTION TO INTERVENE

On this day, the Court considered Intervenors Daniel Cordova and Jacob Cordova's (collectively "the Cordovas") "Opposed Motion to Intervene" and "Memorandum in Support of Motion to Intervene," both filed on July 14, 2008; Hartford Casualty Insurance Company's ("Hartford") "Response to Daniel Cordova and Jacob Cordova's Motion to Intervene," filed on July 25, 2008; and the Cordovas' "Reply in Support of Motion to Intervene," filed on August 5, 2008, in the above-captioned cause. After due consideration, the Court is of the opinion that the Cordovas' Motion should be granted.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On April 5, 2005, Hartford issued a commercial auto insurance policy to Border States Traffic Supply, Inc. ("Border States"). Pl.'s Orig. Compl. ¶ 10; *see id.* Ex. A. On August 7, 2006, Jacob Cordova, as next friend of Daniel Cordova, filed suit against Border States and Jorge Cardona ("Cardona") in the 346th District Court in El Paso County, Texas as a result of a September 30, 2005, incident[1] in which Daniel Cordova sustained injuries.[2] *Id.* ¶ 11. The

---

[1] The case is styled as Daniel Cordova and Jacob Cordova, as next friend of Daniel Cordova v. Jorge Cardona, individually, and Border States Traffic Supply, Inc., No. 2006-3221,

plaintiffs in the Cordova lawsuit subsequently amended their petition by adding Esther Abraham ("Abraham"), Steven George ("George"), and Robert Durkin ("Durkin") as individual defendants. *Id.* ¶¶ 3-6, 13. In light of this, Border States "tendered the Cordova lawsuit to Hartford for a defense and immunity under the Hartford policy," *id.* ¶ 12 (emphasis in original); but Hartford expressly reserved its right to disclaim coverage and seek reimbursement, *see id.* ¶ 14. Because there allegedly exists a bona fide coverage dispute between Hartford and the defendants in the Cordova lawsuit, Hartford seeks a declaratory judgment from this Court that it has no obligation under the terms of the insurance policy to defend or indemnify any of the defendants in the underlying state suit.[3] *Id.* ¶¶ 21-24.

After Hartford filed the instant action on April 7, 2008, none of the Defendants—except Durkin—filed a responsive pleading. *See* Docket Nos. 18, 30. Based on their failure to appear, Hartford moved for default judgment against Border States, Cardona, George, and Abraham. Docket No. 29. However, the Court, in exercising its judicial discretion, denied this request. Docket No. 39.

Thereafter, on July 14, 2008, Daniel and Jacob Cordova, the plaintiffs in the Cordova lawsuit, moved to intervene as of right in this declaratory judgment action pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, Rule 24(b)(1)(B). Mot. 2. Because this

---

346th District Court, El Paso County, Texas ("the Cordova lawsuit").

[2]The Complaint does not provide any specifics regarding the September 30, 2005, incident or indicate what role each Defendant played in the incident. It appears, though, that Daniel Cordova worked for Border States at the time of the incident.

[3]In support of its argument, Hartford seems to rely on two exclusionary provisions listed in the insurance policy, namely, the workers' compensation and fellow employee exclusions. Pl.'s Orig. Pet. ¶¶ 16-17, 21-24; *see also* Pl.'s Mot. for Entry of Default Ex. A.

declaratory judgment action implicates the Hartford insurance policy at issue in the Cordova lawsuit, the Cordovas argue that intervention is appropriate since they have a substantial legal interest in the subject matter of this action. *Id.* at 2-3. Hartford, in turn, opposes the Motion, arguing, in large part, that the Cordovas lack a "direct, substantial, and legally protectable" interest in this suit. Resp. 3. Accordingly, for the reasons discussed below, the Court will grant the Motion.

## II. LEGAL STANDARD

### A. Intervention of Right Pursuant to Rule 24(a)(2)

In the absence of a federal statute conferring an unconditional right to intervene, a motion to intervene as of right is governed by Federal Rule of Civil Procedure 24(a)(2). To intervene as of right under Rule 24(a)(2), an applicant must meet four requirements:

> (1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which [he] seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect [his] interest; and (4) the existing parties do not adequately represent the potential intervener's interest.

*Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004).

Although failure to satisfy any one element precludes the applicant's right to intervene, *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007), "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application," *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996). "[I]ntervention of right," as the Fifth Circuit has routinely acknowledged, "must be measured by a practical rather than technical yardstick." *Edwards*, 78 F.3d at 999 (quoting *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991)). Accordingly,

courts, as a general matter, allow intervention where "no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks and citation omitted).

III. ANALYSIS

The Cordovas argue that they have the right to intervene in this lawsuit under Rule 24(a)(2). Mot. 2. Hartford, on the other hand, argues that intervention is unwarranted because (1) the Cordovas have no direct, substantial, and legally protectable interest in this suit; (2) Durkin, the remaining pro se defendant in this action, can adequately represent the Cordovas' interests, if any, in this action; and (3) the Cordovas' intervention would unduly prejudice the adjudication of the original parties' rights. Resp. 3-7. However, contrary to Hartford's arguments, the Court concludes (1) that intervention is timely,[4] (2) that the Cordovas' interest is not adequately represented,[5] and (3) that the current disposition may, as a practical matter, impair

---

[4]The Court's task, as outlined above, is to first determine whether the Cordovas timely filed their Motion to Intervene. The Cordovas learned of this suit and the underlying claims on May 21, 2008. Mot. 4. They subsequently moved to intervene on July 14, 2008, three days after the District Clerk's entry of default judgment. Docket No. 24. Because Hartford does not contest the issue, the Court finds, without opposition, that the Motion is timely.

[5]The Cordovas maintain that the existing Defendant in this action does not adequately represent their potential interest in this suit. Mot. 3-4. Although the potential intervenors bear the burden of establishing inadequate representation, this burden is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). A potential intervenor satisfies this minimal burden by showing that representation of his interest "may be" inadequate. *Id.* Although Border States, Cardona, George, and Abraham have failed to appear in this action, Hartford argues that Durkin, the remaining pro se defendant, can adequately represent the Cordovas' interests. Resp. 5-6. However, contrary to Hartford's allegations, the Court finds that Durkin cannot adequately represent the Cordovas' interest because (1) he is pro se and (2) his interest is adverse to the Cordovas. Whereas the Cordovas seek to enforce the Hartford policy, Durkin merely maintains that the exclusions in the Hartford policy do not apply to him. Durkin Ans. ¶¶ 2-3. As such, the Court finds that Durkin does not adequately represent the Cordovas' interests.

4

or impede the Cordovas' ability to protect their interest in the underlying state suit.[6] Having dispelled these arguments, the Court will now determine whether the Cordovas possess a direct, substantial, and legally protectable interest in this suit to support intervention.

To intervene as a matter of right, the applicant must have "an interest relating to the property or transaction that is the subject of the action." FED. R. CIV. P. 24(a)(2). In other words, the applicant must have a "direct, substantial, and legally protectable right" and must be "something more than an economic interest." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc). Moreover, "the interest must be one which the substantive law recognizes as belonging to or being owned by the applicant." *Shaunfield v. Citicorp Diners Club, Inc.*, No. 3:04-CV-1087-G, 2005 U.S. Dist. LEXIS 11244, at *17 (N.D. Tex. June 8, 2005) (quoting *New Orleans*, 732 F.2d at 464). "The interest test functions as a practical guide for courts seeking to resolve the claims of all genuinely interested persons in a single proceeding." *Texas v. Approximately $3,551,510.67*, No. H-05-3918, 2006 U.S. Dist. LEXIS 45031, at *3 (S.D. Tex. June 29, 2006).

In the instant action, Hartford contends that the Cordovas, as third-party tort claimants, "have no right to proceed directly against Hartford unless and until they reduce their claim against . . . the defendants to settlement or judgment." Resp. 3-4. However, contrary to Hartford's allegations, the Northern District of Texas in *Bituminous Casualty Corp. v. Garcia*,

---

[6]The Court additionally finds that the disposition of this action may impair the Cordovas' ability to protect their interest in state court because certain determinations made in this Court could ultimately undermine their possible recovery in the Cordova lawsuit. That aside, "considerations of judicial economy guide this Court to allow intervention to avoid duplication of litigation." *Ranger Ins. Co. v. Events, Inc.*, No. 03-2831, 2004 U.S. Dist. LEXIS 17998, at *19 (E.D. La. Sept. 8, 2004).

No. 3:03-CV-1691-N, 2004 U.S. Dist. LEXIS 14052, at *6-7 (N.D. Tex. July 22, 2004), allowed a "[third-party tort] claimant [to] intervene [where] an insurer," as here, "commence[d] a coverage declaratory judgment action" in federal court. Although Hartford acknowledges this holding, it nonetheless argues that *Bituminous* is distinguishable because all the insureds in that case defaulted.[7] Resp. 5. Admittedly, at least one Defendant in this action—Durkin— has not defaulted, but, as stated earlier, he does not adequately represent the Cordovas' interests because (1) he is pro se and (2) his interest is adverse to the Cordovas. *See supra* note 5. Whereas the Cordovas seek to enforce the Hartford policy, Durkin merely maintains that the exclusions in the Hartford policy do not apply to him because he was not a Border States employee at the time of the alleged incident. Durkin Ans. ¶¶ 2-3. Because the reasoning in *Bituminous* applies in this matter, the Court finds that the Cordovas should be allowed to intervene as of right under Rule 24(a).

However, even assuming, *arguendo*, that the Cordovas cannot intervene as of right, the Court still concludes that they could permissively intervene under Rule 24(b)(1). "[P]ermissive intervention is within a district court's discretion," *Newby v. Enron Corp.*, 443 F.3d 416, 424

---

[7] The facts in *Bituminous* are analogous to the instant action. In *Bituminous*, the Northern District of Texas determined whether the plaintiffs in an underlying state suit could intervene in an insurance coverage declaratory judgment action. 2004 U.S. Dist. LEXIS 14052, at *1-2. There, "the underlying dispute arose out of an accident in which [the defendant], [who was] driving a truck, collided with a motorcycle that [intervenors] were riding." 2004 U.S. Dist. LEXIS 14052, at *1-2. Predicated on a reservation of rights letter, the insurance company later sought a declaratory judgment in federal court that it had no duty to defend or indemnify the defendant in connection with the underlying state suit. *Id.* at *3. Because the defendant did not appear in the declaratory judgment action, the court subsequently entered default judgment. *Id.* However, after learning of the default judgment, the pro se defendant moved to set aside the default judgment, and the plaintiffs in the state suit moved to intervene. *Id.* at *4-6. After the court considered all the relevant matters, the remaining issue, as here, was "whether [i]ntervenors' concerns constitute[d] a legally sufficient interest to support intervention." *Id.* at *6.

(5th Cir. 2006), and is "only subject to reversal if extraordinary circumstances so require," *Trans Chem. Ltd. v. China Nat'l Mach. Import and Export Corp.*, 332 F.3d 815, 822 (5th Cir. 2003). Pursuant to Rule 24(b)(1)(B), "[o]n timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact," FED. R. CIV. P. 24(b)(1)(B), so long as it would not "unduly delay or prejudice the adjudication of the rights of the original parties," *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Here, for the prior stated reasons, the Court exercises its discretion and finds that the Cordovas should be allowed to permissively intervene under Rule 24(b).

## IV. CONCLUSION

Based on the foregoing, the Court is of the opinion that Daniel and Jacob Cordova's "Opposed Motion to Intervene" should be granted.

Accordingly, **IT IS ORDERED** that Intervenors Daniel Cordova and Jacob Cordova's "Opposed Motion to Intervene" (Docket No. 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court **FILE** Intervenors Daniel and Jacob Cordova's "Answer in Intervention" (Docket No. 25).

**SIGNED** this 12 day of January, 2009.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE